**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEXIS E. HOUSTON, aka W. STUARTT, | Civil Action No.: 04-1393 (JLL) |
| Plaintiff, | |
| v. | |
| JOEL TRELLA, et al., | **OPINION** |
| Defendants. | |

This matter comes before the Court on the objections of Plaintiff Alexis E. Houston,[1]

Defendants Sheriff Trella, Warden Duffy, Captain Patrizze (collectively "County Defendants")

and Defendants Dr. Chang, Dr. Grady and Health Service Administrator Altano (collectively

Correctional Health Service, Inc. "CHSI Defendants") to the August 1, 2006 Report and

Recommendation of United States Magistrate Judge Ronald D. Hedges regarding three separate

motions for summary judgment filed by Defendants Sheriff Trella, Warden Duffy, Captain

Patrizze, Sgt. O'Sullivan, Lt. Pecoraro, Lt. Jackson, Officer Arent, Officer Kotcher, Officer

Mazza, Ombudsman Moore and Nurse Guida ("County Defendants"); Dr. Chang, Dr. Grady and

Health Service Administrator Altano ("CHSI Defendants"); and Deportation Officer Diaz with

the United States Department of Homeland Security and Immigration Enforcement Agent Urena

of the Bureau of Immigration and Customs Enforcement, pursuant to Federal Rule of Civil

Procedure 56(c). This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331. This

---

[1] Because Plaintiff is a transsexual and identifies herself as feminine, the Court will use
the feminine pronoun when referencing Plaintiff.

motion is resolved without oral argument pursuant to Rule 78 of the Federal Rules of Civil

Procedure.  This Court has conducted a de novo review of those portions of Magistrate Judge

Hedges' August 1, 2006 Report and Recommendation to which Plaintiff, the County Defendants,

and the CHSI Defendants have objected. L. Civ. R. 72.1(c)(2).  For the reasons set forth below,

the Court affirms Magistrate Judge Hedges' decision to deny summary judgment as to CHSI

Defendants Chang, Altano and Grady and to grant summary judgment to County Defendants

O'Sullivan, Pecoraro, Jackson, Arent, Mazza, Moore and Guida.  The Court rejects Magistrate

Judge Hedges' decision to deny summary judgment to County Defendants Trella, Duffy and

Patrizze, and modifies Magistrate Judge Hedges' Report and Recommendation with respect to

the issue of damages.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

A detailed factual background of this case is set forth in this Court's previous Opinion,

issued on September 13, 2004, as well as in Magistrate Judge Hedges' August 1, 2006 Report

and Recommendation, and will not be repeated here, except where necessary to provide context

for the de novo review of the magistrate judge's Report and Recommendation.

Plaintiff commenced this action on March 26, 2004, pursuant to 42 U.S.C. § 1983,

alleging civil rights violations against Defendants.  Plaintiff subsequently moved to proceed in

forma pauperis.  On September 13, 2004, this Court reviewed the Complaint and issued an

Opinion, pursuant to 28 U.S.C. § 1915(e)(2), dismissing the Complaint in its entirely as against

Defendant Officer Kotcher for failure to state a claim upon which relief may be granted, and

allowing only Plaintiff's claim alleging deliberate indifference to Plaintiff's medical condition as

against the remaining Defendants to proceed.

On January 9, 2006, the CHSI Defendants filed a motion for summary judgment. Similarly, the County Defendants filed a motion for summary judgment on January 20, 2006, and Deportation Officer Diaz and Immigration Enforcement Agent Urena filed a motion for summary judgment on January 23, 2006.  All three motions for summary judgment were opposed by the Plaintiff.[2]  The matter was referred to Magistrate Judge Hedges, pursuant to 28 U.S.C. § 636(b)(1)(B), Rule 72(b) of the Federal Rules of Civil Procedure and Rule 72.1(a)(2) of the Local Civil Rules, and on August 1, 2006, a Report and Recommendation was issued.  In his Report and Recommendation, Magistrate Judge Hedges recommended denying CHSI's Motion for Summary Judgment as to Dr. Chang, Dr. Grady and Altano, granting County Defendants' Motion for Summary Judgment as to Nurse Guida, Sgt. O'Sullivan, LT. Pecoraro, Lt. Jackson, Officer Arent, Officer Mazza and Ombudsman Moore, denying County Defendants' Motion for Summary Judgment as to Sheriff Trella, Captain Patrizze and Warden Duffy, granting Deportation Officer Diaz and Immigration Enforcement Agent Urena's Motion for Summary Judgment and limiting Plaintiff's damages to those sustained from emotional distress.

Pursuant to Local Civil Rule 72.1(c)(2), Plaintiff, CHSI Defendants and County Defendants filed timely objections to portions of Magistrate Judge Hedges' Report and Recommendation.  County Defendants also filed a timely reply to Plaintiff's objection.[3]  As

---

[2]  Local Civil Rule 56.1 provides that "[o]n motions for summary judgment, each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue."  Plaintiff has failed to comply with this rule.  Because there is no evidence of bad faith, the Court is willing to overlook this flaw; however, Plaintiff is advised to consult the civil practice rules in future cases.  Fowler v. Borough of Westville, 97 F. Supp. 2d 602, 606-607 (D.N.J. 2000).

[3]  The Court notes that on September 21, 2006, it  received a copy of Plaintiff's Response to County Defendants' Objection to Magistrate Judge Hedges' Report and Recommendation.

explained below, this Court must review the Defendants' Motions for Summary Judgment <u>de novo</u> and owes no deference to Magistrate Judge Hedges' Report and Recommendation.  In doing so, this Court has reviewed all of the submissions, the cases cited by the parties and in the Report and Recommendation, and conducted further research on the issues raised.

## LEGAL DISCUSSION

**A.     Standard of Review**

When the magistrate judge addresses motions that are considered "dispositive," such as to grant or deny a motion to dismiss, a magistrate judge will submit a Report and Recommendation to the district court.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72; L. Civ. R. 72.1(a)(2).  The district court may then "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate [magistrate judge].  The judge may also receive further evidence or recommit the matter to the magistrate [magistrate judge] with instructions."  28 U.S.C. § 636(b)(1)(C); <u>see</u> <u>also</u> L. Civ. R. 72.1(c)(2).  Unlike an Opinion and Order issued by a magistrate judge, a Report and Recommendation does not have force of law unless and until the

---

However, by way of Order dated August 15, 2006, Plaintiff's deadline for filing a response to Defendants' objections was set as September 1, 2006.  In a letter dated September 21, 2006, Plaintiff indicates that she did not receive County Defendants' Objections until September 19, 2006.  The Court contacted Ian Doris, counsel for the County Defendants and requested any information he had in connection with Plaintiff's assertion.  Mr. Doris transmitted an e-mail dated August 28, 2006, indicating that Plaintiff was, at the very least, aware that County Defendants' had attempted to send their Objections to Magistrate Judge Hedges Report and Recommendation to her, and were in the process of re-sending same, in both a hard copy, as well as an e-mail attachment.  As such, Plaintiff could have requested an extension of time to file a Response as early as August 28.  Thus, Plaintiff's Response is clearly untimely and would generally not be considered by the Court.  Nevertheless, in light of Plaintiff's <u>pro se</u> status, this Court has reviewed and considered Plaintiff's Response to County Defendants' Objection to Magistrate Judge Hedges' Report and Recommendation.  However, for the reasons set forth in this Opinion, Plaintiff's Response has not affected this Court's conclusion.

district court enters an order accepting or rejecting it.  United Steelworkers of Am. v. N. J. Zinc Co., Inc., 828 F.2d 1001, 1005 (3d Cir. 1987).

The standard of review of a magistrate judge's determination depends upon whether the motion is dispositive or non-dispositive.  With respect to dispositive motions, the district court must make a de novo determination of those portions of the magistrate judge's Report to which a litigant has filed an objection.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); L. Civ. R. 72.1(c)(2); see also State Farm Indem. v. Fornaro, 227 F. Supp. 2d 229, 231 (D.N.J. 2002); Zinberg v. Washington Bancorp, Inc., 138 F.R.D. 397, 401 (D.N.J. 1990) (concluding that the court makes a de novo review of the parts of the report to which the parties object).

A United States magistrate judge may hear and determine any [non-dispositive] pretrial matter pending before the court pursuant to 28 U.S.C. § 636(b)(1)(A).  The district court will only reverse a magistrate judge's decision on these matters if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A).  Therefore, "this Court will review a magistrate judge's findings of fact for clear error." Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery, 177 F.R.D. 205, 213 (D.N.J. 1997) (citing Lo Bosco v. Kure Eng'g Ltd., 891 F. Supp. 1035, 1037 (D.N.J. 1995)).  Under this standard, a finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (citing United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).  The district court will not reverse the magistrate judge's determination, even in circumstances where the court might have decided the matter differently. Bowen v. Parking Auth. of Camden, 2002 WL 1754493, *3 (D.N.J. Jul. 30, 2002).

"A district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review." Andrews v. Goodyear Tire & Rubber Co., Inc., 191 F.R.D. 59, 68 (D.N.J. 2000).

Because a motion for summary judgment is dispositive, this Court will examine those portions of Defendants' motion addressed by Magistrate Judge Hedges to which the parties have objected under a de novo standard of review. Fed. R. Civ. P. 72(b).[4]  Here, CHSI Defendants object to Magistrate Judge Hedges' interpretation of the facts relating to Dr. Chang's reason for not providing hormone therapy treatment to the Plaintiff and to Magistrate Judge Hedges' failure to dismiss Plaintiff's claim for emotional distress.  Additionally, the County Defendants object to Magistrate Judge Hedges' interpretation of the facts relating to their involvement in Plaintiff's medical treatment, Magistrate Judge Hedge's recommendation that qualified immunity not extend to the them, and to Magistrate Judge Hedge's failure to dismiss Plaintiff's claim for emotional distress.   Plaintiff objects to Magistrate Judge Hedges' recommendation that her damages be limited to those sustained from emotional distress and to the recommendation that Nurse Guida be dismissed from the cause of action.  In conducting this de novo review, the Court "owes no deference to the Magistrate Judge's findings and conclusions."  Taberer v. Armstrong World Indus., Inc., 954 F.2d 888, 904 (3d Cir. 1992).

---

[4]  The Court notes that it has accepted those portions of Magistrate Judge Hedges' August 1, 2006 Report and Recommendation which were not objected to by Plaintiff or Defendants. This Court is satisfied that there is no clear error on the face of the record to warrant denial of Magistrate Judge Hedges' recommendation in connection with those portions of his Report.  As such, Deportation Officer Diaz and Immigration Enforcement Agent Urena's motion for summary judgment will be granted and the County Defendants' motion for summary judgment will be granted as to Sgt. O'Sullivan, Lt. Pecoraro, Lt. Jackson, Officer Arent, Officer Mazza and Ombudsman Moore.

**B.     Summary Judgment Standard**

A party is entitled to summary judgment when it demonstrates that there is no genuine issue of material fact and that the evidence establishes its entitlement to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gleason v. Norwest Mortgage, Inc., 243 F.3d 130, 138 (3d Cir. 2001).  Once the movant has satisfied its initial burden, the opposing party must establish that a genuine factual issue exists.  Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985).  The opposing party cannot rest on mere allegations and must instead present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 243 (1986); Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995); Sound Ship Bldg. Corp. v. Bethlehem Steel Co., 533 F.2d 96, 99 (3d Cir. 1976), cert. denied, 429 U.S. 860 (1976).  In considering a motion for summary judgment, the Court views all evidence in a light most favorable to the party opposing the motion.  Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 330 (3d Cir. 1995).

In light of this framework, the Court first turns to Defendants' objections to Magistrate Judge Hedges' August 1, 2006 Report and Recommendation and then to Plaintiff's objections to same.

**C.     Defendants' Objections to Magistrate Judge Hedges' Report and Recommendation**

**1.     Denial of Medical Care**

CHSI Defendants object to Magistrate Judge Hedges' recommendation that summary judgment not be granted to them on the basis that Magistrate Judge Hedges' misinterpreted the reason why Dr. Chang did not prescribe hormone replacement therapy to the Plaintiff.  In

particular, they argue that Magistrate Judge Hedges' made the following factual interpretation errors: (1) Magistrate Judge Hedges' read Paragraph #6 of Dr. Chang's Certification as stating that a contract existed between the I.N.S. and the Bergen County Jail, and that this contract precluded Plaintiff from receiving female hormone therapy; and (2) Magistrate Judge Hedges' viewed Dr. Chang's ability to prescribe female hormone therapy as in question due to the I.N.S. opposition to that type of treatment.  (CHSI's Objection at 2-3).

Similarly, the County Defendants object to Magistrate Judge Hedges' recommendation that summary judgment not be granted to them on the basis that Judge Hedges misinterpreted certain facts, and because they were not responsible for instituting any medical policies at the Bergen County Jail.  In particular, the remaining County Defendants argue that Magistrate Judge Hedges' made the following factual interpretation errors: (1) that the Passaic County Jail confirmed Plaintiff's receipt of female hormones and provided a copy of the medical records indicating same to the Bergen County Jail; (2) that Dr. Chang's Certification stated that his denial of hormone treatment to the Plaintiff was the result of a contract that existed between the I.N.S. and the Bergen County Jail; (3) that Dr. Chang's Certification stated that pursuant to a contract between CHSI and Bergen County Jail, female hormone therapy was not an approved therapy for I.N.S. detainees; (4) that the County Defendants, as administrators of the Bergen County Jail, contracted with CHSI to provide medical services for the Bergen County Jail population and limited Dr. Chang's ability to prescribe female hormones; and (5) that the contract between Bergen County Jail and CHSI specifically excludes female hormone therapy as a form of treatment to all inmates. (County's Objection at 4-8).

The Due Process Clause of the Fourteenth Amendment, rather than the Eighth

Amendment, controls the issue of whether prison officials must provide medical care to detainees.  City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 243-45 (1983).  However, a detainee's due process rights should be "at least as great as the Eighth Amendment protections available to a convicted prisoner."  City of Revere, 463 U.S. at 244.  The Supreme Court in Estelle v. Gamble, 429 U.S. 97 (1976), held that a prisoner may state a cause of action under § 1983 upon showing that a prison official was deliberately indifferent to his serious illness or injury.  The Third Circuit agrees that the "deliberate indifference" standard employed in Eighth Amendment cases also applies to detainees.  Simmons v. City of Philadelphia, 947 F.2d 1042, 1067 (3d Cir. 1991); Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990).  Thus, in this context, the Fourteenth Amendment incorporates the protections of the Eighth Amendment.  Accordingly, the Court will apply the both the Eighth and Fourteenth Amendment standards of deliberate indifference in evaluating Plaintiff's denial of medical care claim.  Gonzalez-Cifuentes v. U.S. Dept. of Homeland Sec., 2005 WL 1106562, *6 (D.N.J. May 3, 2005).

To prove a violation of his right to adequate medical care, a plaintiff must make a two-part showing.  First, a plaintiff must allege that he had a serious medical need and second, he must allege behavior on the part of the prison officials that constitutes deliberate indifference to that need.  Estelle, 429 U.S. at 104-106.  A medical need is "serious" where it has been diagnosed by a physician as requiring treatment, is "so obvious that a lay person would recognize the necessity for a doctor's attention," or "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss."  Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).  Factors to consider in this analysis are:

"the severity of the medical problems, the potential for harm if the medical care is denied or delayed and whether any such harm actually resulted from the lack of medical attention." Maldonado v. Terhune, 28 F. Supp. 2d 284, 289 (D.N.J. 1998) (citation omitted).

The second element of the Estelle test requires a plaintiff to show that the defendants acted with deliberate indifference to his serious medical need.  "'Deliberate indifference' is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk or harm." Andrews v. Camden County, 95 F. Supp. 2d 217, 228 (D.N.J. 2000) (citing Farmer v. Brennan, 511 U.S. 825, 837-38 (1994)).  The Court also notes that a prisoner's subjective dissatisfaction with his medical treatment does not alone support a finding of deliberate indifference.  Andrews, 95 F. Supp. 2d at 228.  Deliberate indifference is a "subjective standard of liability consistent with recklessness as that term is defined in criminal law." Nicini v. Morra, 212 F.3d 798, 811 (3d Cir. 2000).  In Farmer v. Brennan, the Supreme Court held that the Eighth Amendment requires proof that the prison official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837.  He must be "both [ ] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . .  draw the inference." Id.

Turning to the facts at bar, Plaintiff alleges that she had been undergoing hormone/anti-androgen therapy for five years prior to her admission to the Bergen County Jail in January, 2004. (Complaint, ¶ 22).  She alleges that she had been receiving hormone therapy while confined at the Passaic County Jail, but that Dr. Chang refused to continue with her prescribed hormone therapy because "he did not care to treat this sort of thing" and that the jail's policy was not to provide hormone therapy regardless of a private doctor's prescription.  (Complaint, ¶ 31).

10

Plaintiff further alleges that when she began to suffer severe symptoms of hormone withdrawal, Dr. Chang merely prescribed cold medicine to treat her nasal congestion.  (Complaint, ¶ 32).   As stated in this Court's September 13, 2004 Opinion, there is no indication that any alternative treatment was provided to the Plaintiff.  (Oct. 13 Opinion at 18).  As a result, it is alleged that Plaintiff received no medical treatment for transsexualism and that Defendants' conduct in refusing hormone therapy put Plaintiff at risk for "irreversible harm and damage and subsequent costly reparative treatments." (Complaint, ¶ 34).

As to the first prong of the Estelle test, courts have consistently deemed transsexualism or transgenderism a serious medical need for purposes of the Eighth Amendment. See Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000); White v. Farrier, 849 F.2d 322, 325 (8th Cir. 1988); Meriwether v. Faulkner, 821 F.2d 408, 411-13 (7th Cir.), cert. denied, 484 U.S. 935 (1987); Wolfe v. Horn, 130 F. Supp.2d 648, 652 (E.D. Pa. 2001).  As a result, this Court turns to the subjective prong of deliberate indifference to determine whether Plaintiff has stated a claim for denial of medical care against the CHSI and County Defendants.

With respect to the second element of the Estelle test, the Third Circuit has explained that:

> Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate "to undue suffering or the threat of tangible residual injury," deliberate indifference is manifest.  Similarly, where "knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care," the deliberate indifference standard has been met. . . . Finally, deliberate indifference is demonstrated "[w]hen . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment."

Monmouth County Corr. Inst. Inmates, 834 F.2d at 346 (citations omitted).

a.    CHSI Defendants

### Dr. Chang

According to Dr. Chang's Certification, upon Plaintiff's arrival at the Bergen County Jail, she indicated to Dr. Chang that she was prepared for a sex change and had been taking Estrogen for a year and a half. (Dr. Chang's Certification No. 1, ¶ 8-9).  As a result, Dr. Chang, an employee of the Correctional Health Service, Inc., ordered the medical records from the Passaic County Jail, where the Plaintiff had been previously detained, to determine what medications, if any, the Plaintiff had been receiving.  (Dr. Chang's Certification No. 1, ¶ 9).  In the meantime, Dr. Chang proceeded to treat Plaintiff on several occasions for cold symptoms, constipation and a dark spot on her face.  (Dr. Chang's Certification No. 1, ¶¶ 9-12).   Dr. Chang further certifies that he believed the appropriate course of medical care for Plaintiff was to treat Plaintiff's symptoms, to make psychiatric/psychological counseling available to the Plaintiff and to continue attempting to contact Plaintiff's outside physicians in order to obtain Plaintiff's medical history in order to determine the proper medical treatment in connection with Plaintiff's request for female hormones. (Chang's Certification No. 1, ¶ 17).  Ultimately, Dr. Chang did not prescribe hormone medication to Plaintiff during her detainment at the Bergen County Jail, and he certifies that he was unaware that Plaintiff had any physical manifestations as a result of not having received female sex hormones. (Chang's Certification No. 1, ¶¶ 15, 17).

Plaintiff alleges that Dr. Chang did, in fact, receive the necessary medical records from the Passaic County Jail.  For example, in Plaintiff's Response to County Defendants' Motion for Summary Judgment, she alleges that the records provided to Dr. Chang from the Passaic County

Jail "clearly outlined that the Plaintiff was receiving hormone/antiandrogen treatment."

(Plaintiff's Response to County's Motion for Summary Judgment at 6).  However, an

examination of Exhibit C, to which Plaintiff refers the Court in support of this statement, reveals

a facsimile sent in May of 2005, over a year after Plaintiff had been transferred out of the Bergen

County Jail.[5]  Additionally, the facsimile cover sheet does not indicate that it was sent to the

Bergen County Jail.  (Exhibit C, Plaintiff's Response to County's Motion for Summary

Judgment).  Similarly, in Plaintiff's Objection to Magistrate Judge Hedges' Report and

Recommendation, she states that she has presented evidence that Nurse Guida had received the

necessary documents from the Passaic County Jail. (Plaintiff's Objection at 3).  Plaintiff attaches

a four-page facsimile that does appear to have been sent to the Bergen County Jail on January,

13, 2004 (Plaintiff's Objection, Attachment No. 1).[6]  A review of the medical records enclosed

with this facsimile appears to indicate that Plaintiff had been prescribed Premarin while at the

Passaic County Jail.    In particular, there appear to be two distinct notations on the last page of

the four-page facsimile sent to the Bergen County Jail by the Passaic County Jail, indicating a

doctor's order for Premarin (.625 mg). (Plaintiff's Objection, Attachment No. 1).  However,

Patricia Panzer, a Bergen County Jail Nurse, certifies that the records received from the Passaic

County Jail did not provide confirmation that Plaintiff had been receiving hormone therapy

_____

[5]  Plaintiff wrote to the Court, by letter dated April 7, 2004, indicating a change in address.

[6]  Although discovery closed on December 1, 2005, pursuant to Federal Rule of Civil Procedure 72(b), this Court has reviewed and taken into consideration the documents submitted by Plaintiff on August 30, 2006 and September 7, 2006 only as they relate to her specific objections to Magistrate Judge Hedges Report and Recommendation.  Fed. R. Civ. P. 72(b); L. Civ. R. 72.1(c)(2).  An analysis of Plaintiff's objections is set forth later in this Opinion.

treatment or related medications while at the Passaic County Jail, or at any time prior to coming to the Bergen County Jail. (Panzer's Affidavit, ¶ 8). As a result, the records received at the Bergen County Jail, at the very least, raise a genuine issue of material fact as to whether Plaintiff was being treated with hormone therapy while at the Passaic County Jail, and, in particular, whether the records sent by the Passaic County Jail confirmed said treatment.

Plaintiff also alleges that Dr. Chang's decision to deny hormone therapy treatment to her was based upon certain jail policy which prohibited this form of treatment. (Complaint, ¶ 31). Paragraph 6 of Dr. Chang's own Certification seems to support Plaintiff's allegation:

> Inmate Wellington Stuarrt was an Immigrant and Naturalization Service (I.N.S.) detainee being held in the Bergen County Jail. **If an inmate is an I.N.S. detainee, then the I.N.S./Federal Public Health Service must approve medical treatment for inmates. Female hormone therapy was not an approved therapy for I.N.S. detainees at the time that the inmate was in the Bergen County Jail in 2004.** (emphasis added).

(Chang's Certification No. 1, ¶ 6). Similarly, Nurse Guida's original Affidavit states the following:

> **Because Alexis Houston was an I.N.S. detainee, the guidelines that are required to be followed do not permit hormone therapy to be provided to transgendered inmates.** However, we do provide treatment of any and all symptoms of medical complaints including providing inmates with the opportunity fo psychiatric care, which Ms. Houston refused. (emphasis added).

(Guida's Affidavit No. 1, ¶ 8). In Dr. Chang's subsequent Certification submitted in connection with his objection to Magistrate Judge Hedges' Report and Recommendation,[7] he indicates that

---

[7] Pursuant to Federal Rule of Civil Procedure 72(b), this Court has reviewed and taken into consideration the supplemental certifications and affidavits provided by CHSI and County Defendants as attachments to their objections to Magistrate Judge Hedges' Report and Recommendation. Fed. R. Civ. P. 72(b); L. Civ. R. 72.1(c)(2).

he does not believe that the I.N.S. would have paid for sex hormone therapy. (Chang's Certification No. 2, ¶ 7).  However, Dr. Chang further certifies that he was unaware of any language in the contract that existed between CHSI and the Bergen County Jail that restricted his ability to prescribe female hormone therapy to the Plaintiff. (Chang's Certification No. 2, ¶ 3). As a result, he believes that had he prescribed sex hormone therapy to the Plaintiff, the I.N.S. simply would not have reimbursed the Bergen County Jail for these expenses. (Chang's Certification No. 2, ¶ 7).  The County Defendants support the notion that although the I.N.S. had a policy in effect during the period in question under which hormone replacement therapy was not an approved therapy, the contract that existed between the County of Bergen and the I.N.S. stipulated that all I.N.S. inmates were to be given the same care as that afforded to Bergen County inmates, thus subjecting I.N.S. detainees, such as Plaintiff, to the same policies being applied to Bergen County inmates. (County's Objection at 8).  Similarly, the Affidavit of the Bergen County Jail's Captain Robert Bigott asserts that "there was absolutely no policy denying or prohibiting hormone replacement therapy to transgendered inmates of any kind" at the Bergen County Jail. (Bigott's Affidavit, ¶ 10).

Notably, Dr. Chang certifies that the issues of whether he was actually authorized to prescribe hormone therapy under any contract or policy that may have existed between CHSI and the Bergen County Jail, or between the I.N.S. and the Bergen County Jail, and which entity would have been responsible for the costs associated with this treatment, never became relevant to his decision regarding Plaintiff's medical treatment. (Chang's Certification No. 2,  ¶¶ 3,7). According to Dr. Chang, the reason why these issues allegedly never became relevant to his medical decision is because the Passaic County Jail did not provide any records indicating that

15

the patient was being treated by a sex change specialist, nor did Plaintiff provide him with the names of prior treating physicians.  (Chang's Certification No. 2, ¶ 5).  Thus, Dr. Chang explained that he "did NOT base [his] . . . treatment decision regarding inmate Stuarrt on anything other than [his] . . . medical opinion of what type of treatment was medically appropriate given the limited medical history information that [was] available [to him] on the patient." (Chang's Certification No. 2, ¶ 3).

The Third Circuit has found that "[s]hort of absolute denial, 'if necessary medical treatment [i]s . . . delayed for non-medical reasons, a case of deliberate indifference has been made out." Monmouth County Corr. Inst. Inmates, 834 F.2d at 346 (citation omitted).  In a case with similar facts to the case at bar, the Third Circuit also held that summary judgment was properly denied as to the defendant doctor where there was evidence in the records suggesting that the doctor may have had a non-medical motive in denying medical treatment, "namely, that physical therapy would have placed a considerable burden and expense on the prison and was therefore frowned upon throughout the prison health system."  Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).  Despite the clarification presented by Dr. Chang in his subsequent Certification, based upon the evidence that has been presented, this Court determines that Dr. Chang's original Certification and Nurse Guida's original Affidavit, coupled with the notation in the medical chart sent to the Bergen County Jail from the Passaic County Jail, create a triable issue of fact as to what was the actual basis upon which Plaintiff was denied hormone therapy treatment.  If Dr. Chang's decision not to treat Plaintiff with hormone therapy was based, even indirectly or in part, upon a non-medical reason (i.e., his belief that an existing contract or policy restricted his ability to do so) then Plaintiff has a viable claim.  Therefore, the trier of fact must

16

decide whether any such contract or policy between I.N.S. and the Bergen County Jail, or

between the Bergen County Jail and CHSI was, in fact, a motivating factor in Dr. Chang's

decision to withhold hormone treatment.  As a result, this Court hereby accepts the

recommendation of Magistrate Judge Hedges and denies Dr. Chang's motion for summary

judgment.

### Grady and Altano

In her Complaint, Plaintiff alleges that Defendant Dr. Grady, the Chief Medical Officer of

the Medical Unit of the Bergen County Jail, and Defendant Altano, the Health Services

Administrator at the Bergen County Jail, adhered to faulty policies that violated Plaintiff's

constitutional rights, and failed to assist Plaintiff's efforts to secure proper specialized medical

care, respectively. (Complaint, ¶¶ 13, 16).  In her Response to Bergen County Defendants'

Motion for Summary Judgment, Plaintiff states:

> Defendant officials who knowingly violate the rights of a person
> (detainee) by adhering to agency/institutional policies that are
> contrary to constitutional statutes, are liable.  Other
> transsexual/intersexed detainees have been detained at the Bergen
> County Jail, who were not Federal/I.C.E. detainees but County or
> State inmates.  These individuals also requested hormone therapy
> while in detention and were also denied such, by jail officials.  This
> fact indicates that an institutional policy either mandated
> individually or in concert by the medical department of the Bergen
> County Jail or the Facility's administration, barred the provision of
> hormones and antiandrogen treatments to the Plaintiff.

(Plaintiff's Response to County's Motion for Summary Judgment at 5-6).

In their objection to the Report and Recommendation of Magistrate Judge Hedges,

Defendants Grady and Altano assert that "the supervisory roles of Dr. Grady and Ms. Altano are

not relevant because at the point in time involved in this case factually, Dr. Chang only denied

17

the female sex hormone therapy because he needed to receive and review the plaintiff's outside

private doctor's medical records before he could determine if prescribing the female hormone

was medically appropriate."  (CHSI's Objection at 7).  In their answers to interrogatories, CHSI

Defendants' also explain that:

> Rosemary Altano is the Health Services Administrator who
> administers the Jail medical services, monitors claims, monitors in-
> hospital utilization, performs payroll functions, reviews medical
> bills, maintains medical statistics, monitors and responds to
> medical inmate grievances, administers the medical contract and
> maintains Jail medical standards, among other duties.

(Interrogatory Answer No. 1, Exhibit "G" to CHSI's Motion for Summary Judgment).  CHSI

Defendants' further explain that "Dr. Grady was the Medical Director with supervisory duties."

(Interrogatory Answer No. 1, Exhibit "G" to CHSI's Motion for Summary Judgment).

With respect to the issue of whether any institutional policies were in existence which

may have been relevant in Dr. Chang's decision not to provide hormone therapy as a form of

treatment to the Plaintiff, the following questions were asked and answered by CHSI Defendants:

> [QUESTION:]  Where [sic] there any institutional
> policies in place, at the time of Plaintiff's admission
> to the Bergen County Jail that would exclude her
> from receiving medical treatment for any existing
> serious medical need that Plaintiff might have had
> at that time?
>
> ANSWER: There were no institutional policies in place to
> respond to this question, however, medical care standards
> require supporting medical documentation such as medical
> records for hormone treatment continuation.

(Interrogatory Answer No. 12, Exhibit "G" to CHSI's Motion for Summary Judgment).

> [QUESTION:]  What actions did defendants take
> with regard to granting this request [to be seen by a

18

medical specialist]?

ANSWER: The inmate did not directly request from Dr. Chang to see a medical specialist.  The I.N.S. was contacted by the County's Head Nurse in regard to hormone therapy for sex change and trans-sexualism and the I.N.S. indicated that it will not approve such treatment.

(Interrogatory Answer No. 24, Exhibit "G" to CHSI's Motion for Summary Judgment).

In her Certification, Altano states that, as the Health Services Administrator, she does not remember ever seeing Plaintiff during his detainment at the Bergen County Jail and that her job was primarily administrative in nature.  (Altano's Certification, ¶ 8).  Dr. Grady's Certification provides that he was the Medical Director for the Correctional Health Services, Inc., and the Medical Director at the Bergen County Jail at the time of Plaintiff's detainment at the Bergen County Jail, and that CHSI had a contract with the Bergen County to provide medical care to the inmates detained at the Bergen County Jail.  (Grady's Certification, ¶¶ 1, 4).  Dr. Grady further certifies that he never provided any medical care to the Plaintiff. (Grady's Certification, ¶ 5).  Notably, neither Dr. Grady nor Altano specifically certify that they played no role in establishing or administering medical policies or standards at the Bergen County Jail on behalf of the CHSI.

The Third Circuit has stated that "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" A.M. ex rel. J.M.K. v. Luzerne County Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (citing Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir.1989)).  Similarly, the Second Circuit has addressed this issue and explained that "'[a] supervisory official may be liable because he or she created a policy or custom under which

19

unconstitutional practices occurred, or allowed such a policy or custom to continue,' or 'if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event.'" Cuoco, 222 F.3d at 109 (citation omitted).  Although Plaintiff has not provided any specific evidence indicating that Defendants Altano and/or Grady were directly involved in creating medical policies at the Bergen County Jail, based upon Altano's role as Health Services Administrator and her involvement in administering the Bergen County Jail's medical contract and maintaining the Jail's medical standards, and Dr. Grady's role as Medical Director (of both CHSI and the Bergen County Jail) with "supervisory duties" during the period in question, this Court cannot, as a matter of law, determine that these individuals played no part in the creation or administration of a policy under which unconstitutional practices may have occurred, namely the denial of hormone therapy treatment to the Plaintiff based upon a non-medical reason. Monmouth County Corr. Inst. Inmates, 834 F.2d at 346.  As such, this Court accepts Magistrate Judge Hedges' recommendation that summary judgment be denied as to CHSI Defendants Altano and Dr. Grady.

### b.    County Defendants

Plaintiff alleges that Warden Duffy and Captain Patrizze adhered to policies which they knew were in violation of Plaintiff's civil rights.  (Complaint, ¶¶ 5, 6).  Plaintiff also alleges that Captain Patrizze, Sheriff Trella and Warden Duffy were each deliberately indifferent as to Plaintiff's medical complaints. (Complaint, ¶¶ 4, 5, 6).  In response, County Defendants Warden Duffy, Captain Patrizze and Sheriff Trella argue that they were not deliberately indifferent to Plaintiff's medical needs, and, in the alternative, summary judgment is proper in their favor on the basis of qualified immunity. (County's Motion for Summary Judgment at 8, 14).  In his

Report and Recommendation, Magistrate Judge Hedges' recommended that summary judgment be denied as to these three County Defendants because, as administrators of the Bergen County Jail, they "knew or should have known that the general prohibition of female hormone therapy prior to any medical examination may have been improper." (Report at 18).

In Durmer v. O'Carroll, the Third Circuit held that summary judgment was properly granted to the Warden and Commissioner for Corrections where "[n]either of these defendants . . . is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by a prison doctor." 991 F.2d at 69.  Similarly, in Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004), the Third Circuit reiterated that "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference."   Here, Plaintiff has provided no evidence suggesting that Warden Duffy, Captain Patrizze or Sheriff Trella had any reason to question the expertise of Dr. Chang and other members of the medical staff, or to suggest that these defendants were involved in the creation of any policies which limited Dr. Chang's ability to prescribe hormone therapy.  In the context of claims brought under 42 U.S.C. § 1983, the Third Circuit has specifically indicated that "[b]road, conclusory allegations unsupported by specific factual allegations which implicate particular defendants are not sufficient to state a claim upon which relief may be granted." Hilliard v. N.J. Army Nat. Guard, 527 F.Supp. 405, 408 (D.N.J. 1981) (citing Negrich v. Hohn, 379 F.2d 213, 215 (3rd Cir. 1967)).  County Defendants Trella, Patrizze and Duffy each certify that they were not involved in instituting any such policy at the Jail, and that CHSI was, instead, solely

responsible for implementing medical policies and procedures at the Bergen County Jail.[8]

(Trella's Affidavit, ¶¶ 5, 10; Patrizze's Affidavit, ¶¶ 4, 5; Duffy ¶¶ 4, 6).  Additionally, Plaintiff

has provided no evidence to suggest that County Defendants had actual knowledge that Plaintiff

was being mistreated, or not treated at all.  In fact, the certifications provided by the County

Defendants persuade this Court that any complaints made by the Plaintiff to the County prison

officials were adequately handled. (Patrizze's Certification, ¶ 10; Trella's Certification, ¶¶ 7, 8).

Assuming, arguendo, that the actions of Sheriff Trella, Captain Patrizze and Warden

Duffy, as administrators of the Bergen County Jail, were found to be in violation of Plaintiff's

constitutional rights, because they are government officials, they would be entitled to qualified

immunity in this case.  Since qualified immunity is "an immunity *from suit*, rather than a mere

defense to liability, it is imperative to resolv[e] immunity questions at the earliest possible stage

in litigation."  Under the qualified immunity doctrine, this Court must first ask whether "the facts

alleged, [when] viewed in the light most favorable to the party asserting the injury, show that the

---

[8]  During the Court's review of the record, it came to the Court's attention that the courtesy copy of County Defendants' Objection to Magistrate Judge Hedges' Report and Recommendation sent by the County Defendants to the Court mistakenly contained two copies of Joel Trella's Affidavit, and was missing a copy of John Duffy's Affidavit (Exhibit B).  On September 21, 2006, County Defendants submitted a copy of Duffy's Affidavit to the Court. County Defendants represent to the Court that the Duffy Affidavit was inadvertently left out of the original package due to clerical error.  While the Court notes that the Affidavit submitted by the County Defendants on behalf of Duffy on September 21, 2006 was signed by Duffy on September 20, 2006, the County Defendants have represented that although they were not able to locate Duffy's original signed Affidavit, it had been signed concurrently with the submission of their Objection to Magistrate Judge Hedges' Report and Recommendation, on August 11, 2006. As such, because County's Objection was originally submitted in a timely fashion, the Court reviewed, and took into consideration, the Duffy Affidavit and trusts that the representations made to the Court in this regard by Bergen County's counsel, Ian Doris, are accurate.  It should be noted that the Court also directed County Defendants to serve a copy of the signed Duffy Affidavit upon Plaintiff in the event that Plaintiff's copy of County Defendant's objection was also incomplete.

officers conduct violated a constitutional right." Curley v. Klem, 298 F.3d 271, 277 (3d Cir.

2002) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  If the facts alleged are sufficient to

demonstrate a constitutional violation, the court must then determine whether the right asserted

was "clearly established" at the time of the officer's allegedly unlawful conduct. Id.  This inquiry

"must be undertaken in light of the specific context of the case, not as a broad general

proposition." Saucier, 533 U.S. at 194.  Defendants are entitled to qualified immunity only if the

Court can conclude, "based on the undisputed facts in the record, that Defendants reasonably,

though perhaps mistakenly, believed that their conduct was lawful in light of the clearly

established law and the information known to them at the time of the alleged constitutional

violation." Mantz v. Chain, 239 F. Supp. 2d 486, 496 (D.N.J. 2002).

 Defendants Trella, Patrizze and Duffy specifically certify that they were not involved in

the negotiation or creation of any contract which prohibited the administration of hormone

replacement therapy at the Bergen County Jail.  (Trella's Affidavit, ¶¶ 5, 10; Patrizze's Affidavit,

¶¶ 4, 5; Duffy's Affidavit, ¶ 4).  The Plaintiff has not presented this Court with any evidence to

the contrary.  Instead, Plaintiff has alleged, at most, that the County Defendants violated her

constitutional rights by adhering to policies which violated her constitutional rights. (Complaint,

¶¶ 4, 5, 6).  In light of the fact that these three Defendants are each non-medical prison

employees, who appear to have no background or expertise in medicine, this Court finds that it

would not have been objectively unreasonable for them not to question the existence of a

hypothetical policy prohibiting use of hormone therapy treatment for I.N.S. detainees at the

Bergen County Jail.  As such, this Court respectfully disagrees with Magistrate Judge Hedges'

recommendation, and grants summary judgment to County Defendants Trella, Patrizze and

Duffy.

      **2.**    **Damages**

CHSI and the County Defendants both object to Magistrate Judge Hedges' decision not to dismiss Plaintiff's claims for emotional distress.  In his Report and Recommendation, Magistrate Judge Hedges' acknowledges Plaintiff's failure to provide evidence of her physical injuries (in the form of an expert report) and thus limits Plaintiff's damages to those for emotional distress. (Report at 21).  In reaching this conclusion, Magistrate Judge Hedges cites to Third Circuit caselaw for the proposition that expert medical evidence is not required to prove emotional distress in Section 1983 cases. (Report at 21).  In their objections, CHSI and the County Defendants argue that the Prison Litigation Reform Act ("PLRA") is, instead, applicable in this case, and under the PLRA, if there is no proof of physical injury, then an emotional injury claim cannot stand.  (CHSI 's Objection at 7; County's Objection at 29).

Under the PLRA, an inmate must suffer a physical injury before bringing a civil rights claim.  42 U.S.C. § 1997e(e).  In particular, the PLRA states that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injuries suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).  This Court finds the Defendants' argument that the PLRA is, in fact, applicable in this case to be persuasive.  However, this Court notes that, although not argued or cited to by CHSI or the County Defendants, the Third Circuit has specifically provided the following clarification on this issue:

> Section 1997e(e)'s requirement that a prisoner demonstrate
> physical injury before he can recover for mental or emotional
> injury applies only to claims for compensatory damages. Claims

> seeking nominal or punitive damages are typically not 'for' mental
> or emotional injury but rather 'to vindicate constitutional rights' or
> 'to deter or punish egregious violations of constitutional rights,'
> respectively.

Mitchell v. Horn, 318 F.3d 523, 533 (3d Cir. 2003)) (citation omitted).

Thus, Plaintiff's request for compensatory damages based on any alleged physical injuries is barred because Plaintiff has failed to provide any expert report in support of said damage claim and/or detailing the nature and scope of her alleged physical injuries.[9]  However, the Court notes that Plaintiff also seeks punitive damages based on the alleged constitutional violation. (Complaint at 18).  The PLRA does not preclude injunctive, declaratory, nominal or punitive relief where a prisoner has failed to demonstrate physical injury.  Mitchell, 318 F.3d at 533. Additionally, courts appear to read nominal damages into pro se actions. Id. at  n. 8 ("Moreover, Mitchell's complaint seeks 'other relief as it may appear the plaintiff is entitled.'  We construe this 'catch-all' prayer broadly enough to include a request for nominal damages.").  Plaintiff Houston's Complaint includes this very type of "catch-all" prayer for relief.  (Complaint at 18).

As a result, since Plaintiff's constitutional claim still stands, and the CHSI and County Defendants both failed to provide any support or argument involving Plaintiff's lack of entitlement to nominal and/or punitive damages in connection with the PLRA, this Court hereby modifies the damages analysis provided by Magistrate Judge Hedges' to the extent that Judge Hedges' did not address the applicability of the PRLA, and Plaintiff's potential entitlement to punitive and/or nominal damages.

---

[9]Although Plaintiff originally sought injunctive relief, because she is no longer in custody, that request for relief is deemed moot.

25

**C.**     **Plaintiff's Objections to Magistrate Judge Hedges' Report and Recommendation**

**1.**     **Expert Report**

Plaintiff similarly objects to Magistrate Judge Hedge's recommendation that her damages should be limited to those sustained from emotional distress. (Plaintiff's Objection at 1). In reaching his decision, Magistrate Judge Hedges' noted that Plaintiff failed to submit an expert report setting forth the nature and severity of her physical injuries resulting from the denial of medication, despite Magistrate Judge Hedges' November 29, 2004 Letter Opinion and Order denying Plaintiff's pro bono application, which specifically stated that "this action might require expert testimony." (Report at 21). In particular, Magistrate Judge Hedges' explained that "the jury should not be allowed to speculate as to the nature and extent of Houston's physical injury, especially since she was also denied hormones by authorities in the Bahamas where she was incarcerated following her deportation from the United States." (Report at 21).

In Plaintiff's Objection to Magistrate Judge Hedges' Report and Recommendation, filed on August 30, 2006, Plaintiff argues that she should not be penalized for not having submitted an expert report because she was never ordered to do so by the Court. (Plaintiff's Objection at 1). In reviewing the record, this Court notes that the Plaintiff did, in fact, receive notice that an expert report may be required in this case from Magistrate Judge Hedges' in his November 29, 2004 Letter Opinion and Order denying Plaintiff's pro bono application. (Nov. 29 Opinion at 5). Plaintiff does not allege that she never received this Opinion. In fact, since Plaintiff specifically refers to the November 29th Letter Opinion and Order in her Response to Magistrate Judge Hedges' Report and Recommendation, it is obvious to this Court that Plaintiff both received and read through the November 29th Letter Opinion and Order. While this Court is sympathetic to

26

the Plaintiff's contention that she was unaware that any such expert report was required before

the close of discovery, it is not the role of the federal judiciary to provide legal advice to any of

its litigants, including those litigations who may be proceeding pro se. Rothman v. United

States, 508 F.2d 648, 653 n. 8 (3d Cir. 1975) (finding that it was not proper for a member of the

federal judiciary to offer legal advice); United States v. Althoff, 16 F.3d 417, *2 (Table) (10th

Cir. 1993) (unpublished opinion) ("Courts owe no duty to help pro se litigants make their case.

Instead, a court must remain impartial and treat both sides of a controversy the same.  Were a

judge to help one side of a controversy, he would no longer be a judge but would become an

adversary to the other side.  Likewise, it is improper for a judge to provide legal advice to one

party in a civil controversy.").  As a result, this Court finds that Plaintiff's objection to Magistrate

Judge Hedges' recommendation that her damages be limited to those sustained from emotional

distress based upon her failure to provide an expert report on a timely basis to be unpersuasive.[10]

### 2.     Denial of Medical Care Claim as to Nurse Guida

Plaintiff further objects to Magistrate Judge Hedges' recommendation that Nurse Guida

be dismissed from this cause of action.  In her Objection to Magistrate Judge Hedges' Report and

Recommendation, she "concedes that although Nurse Guida can not override a physician in a

medical decision, she was the person who requested the Plaintiff's medical records from the

Passaic County Jail, received those records and then reported, in writing, not having received

---

[10] Nonetheless, it should be noted that this Court has reviewed the documents submitted by Plaintiff on August 30, 2006 and September 7, 2006, pursuant to Federal Rule of Civil Procedure 72(b) and Local Civil Rule 72.1(c)(2), and found the documents to be largely irrelevant with respect to Plaintiff's claims in this case.  The medical records that have been submitted cannot substitute for the need of an expert report detailing Plaintiff's damages and setting forth, to a reasonable degree of medical probability, the causal connection between said damages and the alleged constitutional violation.

anything from the Passaic County Jail's Medical Unit." (Plaintiff's Objection at 3). As previously noted, Plaintiff has not presented any specific evidence indicating that Nurse Guida was in receipt of and chose to disregard Plaintiff's medical records from the Passaic County Jail. Although Plaintiff attaches a four-page facsimile that does appear to have been sent to the Bergen County Jail on January, 13, 2004 to her Response to Magistrate Judge Hedges' Report and Recommendation, this facsimile, as previously indicated, raises a genuine issue of fact as to whether the Plaintiff was, in fact, receiving Premarin. However, said record does not indicate that it was personally received by Nurse Guida. Furthermore, Plaintiff's allegations regarding the actions on the part of Nurse Guida are unsubstantiated. There is no evidence in the record that Nurse Guida actually received the subject medical records or willfully or otherwise withheld said records from Dr. Chang. Therefore, under the circumstances, this Court finds that the actions of Nurse Guida do not amount to a claim for medical indifference under the Eighth Amendment.

Additionally, in her Complaint, Plaintiff argues that Nurse Guida refused to schedule appointments with physicians when Plaintiff submitted sick call requests. (Complaint, ¶ 19). Nurse Guida's original Affidavit states that, at the time of Plaintiff's detention, Bergen County Jail's protocol required patients to fill out sick call slips for all medical complaints or requests to be seen by a physician and to place the sick call slips in a locked sick call box which was accessible only by nursing staff. (Guida's Affidavit No. 1, ¶ 3). Nurse Guida's Affidavit also provides a detailed description of the seven sick call requests properly submitted by Plaintiff. (Guida's Affidavit No. 1 at 2-5). In particular, Nurse Guida certifies that, of those seven sick call requests made by Plaintiff, only three mention medical complaints and that the Plaintiff was seen by a physician shortly thereafter, on each occasion. (Guida's Affidavit No. 1 at 2-5). The Court

has reviewed said records which confirm Nurse Guida's statements.  Nurse Guida does certify that

upon her review of Plaintiff's file, she did see approximately fifteen letters written by Plaintiff to

numerous prison officials, and that at least several of those letters do mention symptoms which

Plaintiff believed to be associated with hormone withdrawal.  (Guida's Affidavit No. 1, ¶ 6).

Plaintiff, however, has not provided any evidence indicating that Nurse Guida failed to follow

proper procedure in submitting all medical complaints, or that Plaintiff had submitted more than

those seven sick call requests certified to by Nurse Guida.  In addition, although Nurse Guida's

affidavits do not clarify whether Plaintiff attempted to deliver those letters through Nurse Guida,

Plaintiff has provided no evidence indicating that Nurse Guida read or was responsible for reading

the handwritten letters that Plaintiff had sent to numerous other prison officials.   As such,

Plaintiff is unable to fulfill the second element of the Estelle test, namely by failing to show that

Nurse Guida engaged in any type of behavior which prevented Plaintiff from receiving proper

medical treatment. Estelle, 429 U.S. at 106.

### CONCLUSION

Having thoroughly reviewed Magistrate Judge Hedges' Report and Recommendation and

the record of this case, including the Plaintiff's and Defendants' objections, as well as County

Defendants reply to Plaintiff's objection, this Court: (1) adopts Magistrate Judge Hedges' decision

to deny summary judgment as to CHSI Defendants Chang, Altano and Grady; (2) adopts

Magistrate Judge Hedges' decision to grant summary judgment to County Defendants

O'Sullivan, Pecoraro, Jackson, Arent, Mazza, Moore and Guida; (3) rejects Magistrate Judge

Hedges' decision to deny summary judgment to County Defendants Trella, Patrizze and Duffy; (4)

modifies Magistrate Judge Hedges' Report and Recommendation with respect to the issue of

damages.

An appropriate order accompanies this Opinion.

_____

/s/ Jose L. Linares

DATED: September 22, 2006              JOSE L. LINARES,
                                       UNITED STATES DISTRICT JUDGE